IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEAN GREGORY,
an individual,

    Plaintiff,

      v.

MIHAIL MIHAYLOV,
individual and as an officer of
Montway, Inc., an Illinois corporation,
et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-2266-TWT

## ORDER

This is a pro se[1] action for libel.  It is before the Court on Defendants Montway Inc. and Montway Trans, Inc.'s Motion to Set Aside Default [Doc. 11], the Plaintiff's Motion for Default Judgment as to Defendants Montway Inc. and Montway Trans, Inc. [Doc. 12], Montway Inc. and Montway Trans, Inc.'s Motion to Strike Portions of Plaintiff's Declaration [Doc. 17], Defendant Mihaylov's Motion to Dismiss or in the Alternative Motion to Transfer Venue [Doc. 21], Montway Inc. and Montway

---

[1] The Plaintiff states that he resides in Powder Springs, Georgia.  However, he also states that he has a law office in Washington, D.C.  Therefore, the Court will not treat this as a pro se complaint for the purpose of applying the relaxed pleading rules applicable to non-attorney pro se litigants.

Trans, Inc.'s Motion to Supplement Response [Doc. 23], Montway Inc. and Montway Trans, Inc.'s Motion to Present Additional Evidence [Doc. 25], Montway Inc. and Montway Trans, Inc.'s Motion to Strike Conclusory Allegations From Plaintiff's Opposition to Defendant's Motion to Set Aside Default [Doc. 26], Mihaylov's Motion to Present Additional Evidence [Doc. 34], Mihaylov's Motion to Dismiss First Amended Complaint or in the Alternative Motion to Transfer Venue [Doc. 39], Montway Inc. and Montway Trans, Inc.'s Motion to Dismiss First Amended Complaint or in the Alternative Motion to Transfer Venue [Doc. 40], and Mihaylov, Montway Trans, Inc., and Montway Inc.'s Motion for Hearing [Doc. 41].  For the reasons set forth below, Defendants Montway Inc. and Montway Trans, Inc.'s Motion to Set Aside Default [Doc. 11] is GRANTED, the Plaintiff's Motion for Default Judgment as to Defendants Montway Inc. and Montway Trans, Inc. [Doc. 12] is DENIED, Montway Inc. and Montway Trans, Inc.'s Motion to Strike Portions of Plaintiff's Declaration [Doc. 17] is DENIED as MOOT, Defendant Mihaylov's Motion to Dismiss or in the Alternative Motion to Transfer Venue [Doc. 21] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Supplement Response [Doc. 23] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Present Additional Evidence [Doc. 25] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Strike Conclusory Allegations From

Plaintiff's Opposition to Defendant's Motion to Set Aside Default [Doc. 26] is DENIED as MOOT, Mihaylov's Motion to Present Additional Evidence [Doc. 34] is DENIED as MOOT, Mihaylov's Motion to Dismiss First Amended Complaint or in the Alternative Motion to Transfer Venue [Doc. 39] is GRANTED, Montway Inc. and Montway Trans, Inc.'s Motion to Dismiss First Amended Complaint or in the Alternative Motion to Transfer Venue [Doc. 40] is GRANTED, and Mihaylov, Montway Trans, Inc., and Montway Inc.'s Motion for Hearing [Doc. 41] is DENIED as MOOT.[2]

## I.  Background

The Plaintiff purchased a 2002 Dodge Ram from former Defendant KDK on April 27, 2012.[3]  (Am. Compl. ¶ 12).  To ship the truck from Ohio to Georgia, the

---

[2]The Amended Complaint lists as Defendants DOES 1-25.  The Plaintiff states that these Doe Defendants "were in some manner responsible or legally liable for the actions, events, transactions, and circumstances alleged herein."  (Am. Compl. ¶ 10). The Plaintiff offers no further information on the identity of the Doe Defendants and only states that he will seek leave of the Court to add the true names when they are ascertained.  However, "[a]s a general matter, fictitious party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  The only exception is when the Plaintiff has provided a specific description of the Doe defendant.  Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (1992)).  Here, the Plaintiff has not provided descriptions, let alone specific descriptions, of any of the 25 Doe Defendants.  Accordingly, DOES 1-25 should be dismissed from this action.

[3]The original complaint also included KDK Auto Brokers, Inc. as a Defendant. However, the Plaintiff voluntarily dismissed KDK with prejudice on August 3, 2012. (See [Doc. 4]).  Despite this dismissal, KDK was included as a Defendant in the

Plaintiff utilized the uShip.com website to hire Defendant Mihaylov to deliver the truck to Georgia. (Am. Compl. ¶¶ 13-14). Defendant Mihaylov in turn delegated the shipping to Buggay Motorsports. (Am. Compl. ¶ 16). Buggay delivered the vehicle to the Plaintiff's residence on May 3, 2012. (Am. Compl. ¶ 20).

During the delivery inspection, the Plaintiff identified damage on the front bumper and informed Buggay of the damage. (Am. Compl. ¶ 20). Buggay contacted KDK which allegedly informed Buggay that it would cover the damage, and the Plaintiff accepted delivery based on KDK's information. (Am. Compl. ¶¶ 21-22). KDK apparently did not follow up on its representation and, after obtaining estimates for the repairs (about $1,000.00), the Plaintiff sent a demand letter for the repair costs to KDK, Mihaylov, and Buggay. (Am. Compl. ¶¶ 24-25). The Plaintiff alleges that Mihaylov responded to the demand letter by calling the Plaintiff in Georgia and sending Buggay's insurance certificate. (See Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer, at 5-7).

The Plaintiff also posted a negative rating of Mihaylov on the uShip.com website. (Mihaylov Aff. ¶ 16, Ex. 3). In response, Defendant Mihaylov posted a statement about the Plaintiff on the uShip.com website stating that "this individual is

---

Amended Complaint filed on October 31, 2012. (See Am. Compl. ¶ 9). There is no indication from the Plaintiff that he is reasserting claims against KDK. Accordingly, KDK is not a party to this action following its dismissal on August 3, 2012 [Doc. 4].

trying to scam money from the Carriers [sic] insurance," that the Plaintiff was "claiming non-existing damage on a vehicle 7 days after delivery," and that the public should "avoid doing business with this guy." (Am. Compl. ¶¶ 25-30). The Plaintiff was a member of the uShip.com website and his website profile identified him as "Dean G." (Am. Compl. ¶ 31). The Plaintiff alleges that Mihaylov republished the statements in a separate posting on the uShip.com website. (Am. Compl. ¶ 33).

The Plaintiff emailed Mihaylov demanding that he remove the postings from the uShip website. Mihaylov responded by email and refused to remove the postings. (Am. Compl. ¶¶ 35-38). The Plaintiff then repeated his demand for retraction and advised Mihaylov that he would bring suit if the postings were not removed. (Am. Compl. ¶ 39). Mihaylov did not retract the statements, and the Plaintiff filed a complaint with the Better Business Bureau of Chicago and Northern Illinois. (See Am. Compl. ¶ 40 and Ex. L). The Plaintiff alleges that Mihaylov republished the defamatory statements on the BBB website along with an additional statement that Mihaylov will "legally go after" the Plaintiff if the Plaintiff files an insurance claim. (Am. Compl. ¶ 41).

The Plaintiff filed suit against Mihaylov, Montway Inc., and Montway Trans, Inc. on June 29, 2012. The Plaintiff alleged causes of action for libel per se, false light invasion of privacy, bad faith, and violations of the Georgia Fair Business Practices

Act.  (See Am. Compl. ¶¶ 52-81). The parties dispute whether Montway Inc. and Montway Trans, Inc. (the "Montway Defendants") were properly served.   On September 12, 2012, the Plaintiff obtained a Clerk's Entry of Default as to the Montway Defendants.  On September 24, 2012, the Montway Defendants made a special appearance to set aside the default while maintaining that this Court does not have personal jurisdiction.  On October 18, 2012, Mihaylov filed a motion to dismiss or transfer venue.   On October 31, 2012, the Plaintiff filed his First Amended Complaint.  On November 14, 2012, both Mihaylov and the Montway Defendants moved to dismiss the First Amended Complaint or to transfer venue.  These motions, along with a variety of motions to strike or supplement, are before the Court.  The Court concludes it does not have personal jurisdiction over the Defendants and therefore does not address the issues of service of process or venue.

## II.  Motion to Dismiss for Lack of Personal Jurisdiction Standard

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  This standard is satisfied "if the plaintiff presents enough evidence to withstand a motion for directed verdict."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  In the Eleventh Circuit, a party presents

enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995).  Therefore, a plaintiff need not conclusively prove the facts necessary for the assertion of personal jurisdiction.  Rather, she must present enough evidence to create a jury question.  A court must construe the allegations in the complaint as true so long as the defendant does not dispute the facts.  Morris, 843 F.2d at 492.  If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, however, courts should construe all reasonable inferences in favor of the plaintiff.  Madara, 916 F.2d at 1514.

## III.  Discussion

### A.  Motion to Set Aside Default

Preliminarily, the Montway Defendants have moved to set aside the default entered against them on September 12, 2012.  Rule 55(c) permits the court, in its discretion, to set aside an entry of default upon a showing of good cause.[4]  Fed. R. Civ. P. 55(c); African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201,

---

[4]The "good cause" standard used to determine whether to set aside entry of default is distinct from and more liberal than the "excusable neglect" standard, set forth in Rule 60(b), which is used to set aside a default judgment.  E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990).

1202-03 (11th Cir. 1999); <u>Robinson v. United States</u>, 734 F.2d 735, 739 (11th Cir. 1984).  The Eleventh Circuit Court of Appeals has stated that "good cause" is a mutable standard.  <u>Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion</u>, 88 F.3d 948, 951 (11th Cir. 1996).  In determining whether good cause is present, courts have considered whether the default was culpable or willful, whether the defaulting party acted promptly to correct the default, whether setting aside default would prejudice the nondefaulting party, and whether the defaulting party has a meritorious defense.  <u>Id.</u>; <u>Rasmussen v. W.E. Hutton & Co.</u>, 68 F.R.D. 231, 233 (N.D. Ga. 1975).  Because good cause is not susceptible to a precise formula, a court should also keep in mind that defaults are generally not favored.  On the contrary, there is a preference for deciding cases on the merits.  <u>See In re Worldwide Web Systems, Inc.</u>, 328 F.3d 1291, 1295 (11th Cir. 2003).

Here, the Defendants moved to set aside the default only twelve days after its entry, replied to the Plaintiff's opposition to their motion to set aside default, and filed several additional motions.  This level of participation suggests that the default was not willful.  Moreover, the Plaintiff has not argued that setting aside the default would prejudice him in any way.  Given the Eleventh Circuit's preference for deciding cases on the merits, the Montway Defendants' Motion to Set Aside the Default should be granted.  Likewise, the Plaintiff's Motion for Default Judgment should be denied.

B.  Motions to Dismiss or Transfer

The Defendants argue that this Court should dismiss the case or transfer it to the Northern District of Illinois because the Court lacks personal jurisdiction over the Defendants and because venue is improper in the Northern District of Georgia as the delivery contract included a forum selection clause mandating the Northern District of Illinois as the appropriate venue for any claim arising out of the delivery contract. The Plaintiff in turn argues that this Court does have personal jurisdiction because Mihaylov has minimum contacts with Georgia.  The Plaintiff further contends that the forum selection clause does not apply because the allegations of libel and false light invasion of privacy do not "arise out of" the vehicle service contract.

With respect to personal jurisdiction, "[a] federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).  The Georgia long-arm statute provides, in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of

action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state ....

O.C.G.A. § 9-10-91. The Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, 593 F.3d at 1259.

As noted, the burden is initially on the Plaintiff to establish a prima facie case of personal jurisdiction over the Defendants. Morris, 843 F.2d at 492. Here, the Plaintiff has not met his initial burden in establishing jurisdiction over the Montway Defendants. Aside from being listed as parties, Defendants Montway Inc. and Montway Trans, Inc. are only mentioned four times in the Complaint. The Complaint states that "Montway" delegated shipping the vehicle to Buggay and notified the Plaintiff that the vehicle was being shipped. (See Am. Compl. ¶¶ 16-18). The Complaint also stated the Plaintiff sent a demand letter to "Montway," but his briefings indicate he sent the demand letter to Mihaylov, who responded to the letter. (See Am. Compl. ¶ 25; Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer, at 5-7). The

causes of action refer to the "Defendants" in a conclusory fashion without providing supporting detail. The Court will not credit conclusory allegations in determining whether the Plaintiff has established personal jurisdiction over the Montway Defendants. See Snow v. DirecTV, 450 F.3d 1314, 1318 (11th Cir. 2006) (rejecting conclusory allegations in personal jurisdiction inquiry). Further, the counts for libel per se and false light invasion of privacy both refer to "Defendants' accusations that the Plaintiff was engaged in the crime of insurance fraud," but the factual allegations in the Complaint specifically say that Mihaylov made the accusations of insurance fraud on the uShip.com website. (See Am. Compl. ¶¶ 26, 52-72). Indeed, all of the conduct listed in the individual causes of action is described in the factual allegations as the conduct of Mihaylov. Even the acts of accepting the order to ship the truck and arranging payment are attributed to Mihaylov. Additionally, the Plaintiff's responses to the Defendants' motions to dismiss or transfer focus entirely on the contacts Mihaylov has with Georgia and do not mention the Montway Defendants. [5] (See Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer, § II.A). In sum, the Plaintiff has not alleged facts supporting a prima facie case of personal jurisdiction over the Montway

---

[5]The Plaintiff appears to respond to both Mihaylov and the Montway Defendants' Motions to Dismiss in a single response brief. The arguments concerning minimum contacts are labeled only "Mihaylov's Contacts with Plaintiff in Georgia." (See Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer Venue).

Defendants.  Accordingly, the Plaintiff has not met his burden and the Montway Defendants should be dismissed because this Court does not have personal jurisdiction over them.

With respect to Defendant Mihaylov, the Plaintiff alleges Mihaylov has made the following contacts with Georgia: (1) contracting with the Plaintiff in Georgia to deliver a vehicle via the uShip.com website; (2) accepting payment for the delivery service through the uShip.com website from the Plaintiff's credit card in Georgia; (3) notifying the Plaintiff the vehicle was being shipped to Georgia; (4) delivering the vehicle to Georgia; (5) telephoning the Plaintiff in Georgia in response to his demand letter; (6) sending the Plaintiff a copy of Buggay's insurance certificate; (7) placing false, defamatory statements on the internet; (8) republishing false statements of fact on the uShip website; (9) directing an email to the Plaintiff in Georgia; and (10) reposting statements on the BBB of Chicago and Northern Illinois website.  (See Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer, at 5-7).  These contacts can be divided into two categories, the contacts relating to the delivery of the truck and the contacts related to the allegedly defamatory statements.  Mihaylov has provided affidavits disputing the Plaintiff's alleged contacts, in particular disputing the accessibility of the uShip.com website to the public in Georgia.  Even assuming the contacts the Plaintiff listed could satisfy the Georgia long-arm statute – which is far from certain

– the contacts do not support an assertion of personal jurisdiction over Mihaylov that comports with due process.

To satisfy due process, the assertion of personal jurisdiction must satisfy two prongs. First, the defendant over which jurisdiction is asserted must have "fair warning" that he is subject to suit in the forum state. Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008). "The focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." Diamond Crystal Brands, 593 F.3d at 1268 (citing Burger King Co. v. Rudzewicz, 471 U.S. 462, 480 (1985)). "This focus ensures that a defendant will not be subject to jurisdiction based solely on random, fortuitous, or attenuated contacts." Id. (citing Burger King, 471 U.S. at 475 (internal quotation marks omitted)). "In specific jurisdiction cases, the fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from the alleged injuries that arise out of or relate to those activities." Id. (quoting Burger King, 471 U.S. at 472-73) (internal alterations and quotation marks omitted)).

Here, the Plaintiff has enumerated ten contacts the nonresident Defendant Mihaylov has made with Georgia. These contacts surround the contract to deliver the truck to Georgia and the communications and website postings following the delivery.

These contacts are insufficient to establish personal jurisdiction over Mihaylov because (1) the facts surrounding the alleged intentional torts do not establish that the torts had an "effect" in Georgia, and (2) the contacts associated with delivering the truck to Georgia are insufficiently related to the conduct underlying the tort claims.[6]

The Plaintiff is alleging causes of action for libel per se, false light invasion of privacy, and violations of the GFBPA.  (See Am. Compl. ¶¶ 52-81).  The Plaintiff argues that the contacts comprising the intentional torts – libel per se and false light invasion of privacy – had an effect in Georgia sufficient to warrant personal jurisdiction.  "The Eleventh Circuit applies the Calder effects test in cases involving intentional torts." Ellis v. Jackson Nat'l Life Ins. Co., No. 2:11-cv-1064-WKW, 2012 U.S. Dist. LEXIS 123192, at *16 (M.D. Ala. Aug. 30, 2012) (citing Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 (11th Cir. 2009)).  "[T]he effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated."  Id. (citing Oldfield, 558 F.3d at 1220 n.28).

_____

[6]The Plaintiff does not appear to argue for general jurisdiction.  In any event, the Plaintiff has not shown that Mihaylov has sufficiently systematic and continuous contacts with Georgia to warrant general jurisdiction.  See Madara, 916 F.2d at 1516 n.7 (discussing general and specific jurisdiction).

Here, the connection between the tort claims and Georgia is too remote for the alleged torts to be considered contacts with Georgia.  The Plaintiff has pled facts to show that he resided in Georgia when the allegedly defamatory statements were made on the uShip.com and the BBB of Chicago and Northern Illinois websites.  However, to satisfy the effects test from <u>Calder</u>, "there must be 'something more' than the fact that a plaintiff feels the intentional conduct's effect in the forum state."  <u>Id.</u> (citing <u>Licciardello</u>, 544 F.3d at 1287).  The defendant must have "expressly aim[ed] his wrongful conduct, individually targeting a known forum resident."  <u>Id.</u> (citing <u>Licciardello</u>, 544 F.3d at 1287).  Here, the Defendants have offered an affidavit from uShip.com management showing that there was no information whatsoever on the uShip.com website connecting the Plaintiff's profile with Georgia.  (<u>See</u> Hoover Aff. ¶¶ 14-16) (stating that the public cannot access information concerning site member's location).  Likewise, the BBB of Chicago and Northern Illinois contains only the limited information the Plaintiff himself posted on that website, and is necessarily focused on Chicago and Northern Illinois, not Georgia.  (<u>See</u> Mihaylov Oct. 16 Aff. Exs. 6 & 7).  The limited connection between these websites and Georgia undermine the Plaintiff's contention that the defamatory statements were directed at the Plaintiff in Georgia.  Additionally, Mihaylov's statements on both the BBB website and the uShip.com website were in response to the Plaintiff's postings on the respective

websites, suggesting that Mihaylov did not "expressly aim" his conduct at Georgia. See Licciardello, 544 F.3d at 1287; (See Mihaylov Oct. 16 Aff. Exs. 3, 6, 7). Accordingly, the Defendant could not have reasonably anticipated that the statements he posted on the uShip.com website and BBB website would cause injury in Georgia.

In support of this conclusion, the Court notes that cases finding personal jurisdiction over alleged libelers involved substantially more contact between the statements and the forum state than there is here. In Calder, the libelous statements were considered "expressly aimed" at the California plaintiff "because the defendants knew their article would have a potentially devastating impact on the California plaintiff." Licciardello, 544 F.3d at 1285 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). The potentially devastating impact in California stemmed from the fact that the magazine sold more copies in California than any other state, including 604,431 copies of the issue with the libelous statements. See Calder, 465 U.S. at 784 n.2. Likewise, in Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984), the court concluded that personal jurisdiction over a nonresident magazine was proper in a libel action. The court noted that "libel is generally held to occur wherever the offending material is circulated." Id. (citing Restatement (Second) of Torts § 577A, Comment a (1977)). The allegedly libelous statements were made in five separate magazine issues, each of which circulated between 10,000 and 15,000 copies in the

forum state.  Id. at 772.  The court concluded that the forum state could exercise jurisdiction because the magazine had "continuously and deliberately exploited the [forum state] market," the magazine "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." Id. at 781 (quoting World-Wide Volkswagen Corp., 444 U.S. at 297-98).

Here, on the other hand, the allegedly libelous statements were published – in response to the Plaintiff's initial post – on an independent website, uShip.com, and Mihaylov has shown that no visitor to the website could ascertain that the Plaintiff was in Georgia.  (See Hoover Aff. ¶¶ 14-16).  Similarly, the statements were reposted on the BBB website, again in response to the Plaintiff's initial posting, and an online posting on the BBB *of Chicago and Northern Illinois* is a far cry from circulating 10,000 magazines in Georgia.  See Keeton, 465 U.S. at 777; Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir. 1990) (concluding that alleged libeler was not subject to personal jurisdiction in Florida because, unlike in Keeton, the libeler had no control over the circulation and distribution of magazine in which he made libelous statements).

Similarly, the few contacts that Mihaylov has with Georgia in connection with the delivery contract are insufficiently related to this suit to permit personal

jurisdiction.[7]  The Eleventh Circuit does not have a rigid test to analyze the relatedness of an alleged tort with the defendant's contacts with the forum state.  Oldfield, 558 F.3d at 1222.  However, "the contact must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have 'fair warning that a particular activity will subject them to the jurisdiction of a foreign sovereign.'"  Id. at 1222-23 (quoting Burger King, 471 U.S. at 472); Licciardello, 544 F.3d at 1285 n.3 ("it is not enough that there be some similarity between the activities that connect the defendant to the forum and the plaintiff's claim").

In Oldfield, the Eleventh Circuit determined that the contacts the defendant had supporting personal jurisdiction were insufficiently related to the torts alleged in the complaint to support jurisdiction.[8]  The plaintiff had visited the defendant's website advertising its resort in Costa Rica.  Through the website, the plaintiff booked a room

---

[7]The Plaintiff's briefs implicitly support this conclusion.  While the Plaintiff argues that personal jurisdiction is appropriate under O.C.G.A. § 9-10-91(1) because Mihaylov conducted business in Georgia, the Plaintiff also argues that the forum selection clause in the delivery contract should not be enforced because Mihaylov's statements "do not 'arise out of,' or share any causal connection with, the vehicle delivery service contract."  (See Pl.'s Opp. to Defs.' Mot. to Dismiss or Transfer Venue, at 14, 16).

[8]The court in Oldfield was determining whether jurisdiction was proper based on Federal Rule of Civil Procedure 4(k)(2).  See Oldfield, 558 F.3d at 1218.  This framework did not alter the due process analysis.  See id. at 1220-21.

reservation and confirmed the transaction through a credit card payment and an email exchange. Id. at 1214. When the plaintiff was vacationing at the resort, he suffered an injury while on a fishing trip guided by a nonparty. Id. The court held that although the plaintiff's injury was a but-for consequence of his visiting the defendant's website and making a reservation, such an interpretation of "but-for" was too broad. Id. at 1223. Instead, the court examined "whether the injury [plaintiff] suffered ... was a foreseeable consequence of his viewing the [defendant's] website, reserving a room at the resort, and arranging for a fishing trip run by someone else." Id. The court concluded that "[t]he relatedness element demands a closer and more substantial causal relationship between the relevant contacts and the alleged tort than the relationship presented here." Id. at 1224.

Here, the contacts Mihaylov has with Georgia are similarly too remote from the alleged torts to warrant personal jurisdiction.[9] Unlike in Oldfield, the Plaintiff here

---

[9]Although the Plaintiff included causes of action in his Amended Complaint for bad faith and violations of the Georgia Fair Business Practices Act, the allegations associated with these causes are insufficient to sustain personal jurisdiction based on these claims. First, the bad faith cause seeks costs and fees and is necessarily derivative of the libel per se and false light invasion of privacy allegations. See Department of Transportation v. Georgia Television Co., 244 Ga. App. 750, 753 (2000) ("A party cannot receive attorney fees under O.C.G.A. § 13-6-11 unless it prevails on its basic cause of action."). Second, the allegations associated with the GFBPA claims are too conclusory to sustain jurisdiction. These allegations only state that the Defendants "engaged in unfair or deceptive acts in the conduct of a consumer transaction or practices in trade or commerce." (See Am. Compl. ¶¶ 79-81). There

did not even visit a website belonging to the Defendant, he instead visited the uShip.com website and booked the delivery through uShip.com's system. The parties confirmed the transaction through a credit card payment and terms agreement facilitated by the uShip.com website. The Defendant hired a third party, Buggay, to actually deliver the truck. When the truck was damaged upon delivery, Buggay allegedly informed the Plaintiff that KDK, the original seller and a nonparty, would be responsible. When these representations fell through, the Plaintiff sent a demand letter to the Defendants, and Mihaylov responded by telephoning the Plaintiff and sending him Buggay's insurance certificate. Following this exchange, the Plaintiff posted a complaint on the uShip.com website. In response to the complaint, Mihaylov posted the allegedly defamatory statements, and in response to the Plaintiff's posting on the BBB website, Mihaylov allegedly reposted the defamatory statements. See Burger King, 471 U.S. at 475 ("Jurisdiction is proper... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."). In other words, the contact the Defendants had

---

are no other allegations in the Complaint that seem to indicate any Defendant engaged in deceptive or unfair business practices outside of allegations associated with the defamatory statements. Further, the Plaintiff's briefs indicate that this claim is also derivative of the libel and invasion of privacy claims because the Defendants' allegedly false accusations comprise the unfair and deceptive acts. (See Pl.'s Mot. for Default J., at 4). Accordingly, the relatedness inquiry applies to the GFBPA claim as much as to the libel per se and false light invasion of privacy claims.

with Georgia – agreeing and accepting payment to ship the truck to Georgia – is connected to the underlying torts – the defamatory statements – by virtue of a third-party shipper, statements made by the third party shipper, statements made by the nonparty seller, and the Plaintiff's posting of complaints on the uShip.com website and the BBB website.   The relatedness between the contract and the alleged torts is at least as attenuated as the relatedness between the hotel and the plaintiff's injury in Oldfield.   Accordingly, the Court concludes the defamation allegations were not foreseeable from the business contacts with Georgia and therefore asserting personal jurisdiction would not comport with due process.

Because the "fair warning" component of the personal jurisdiction analysis indicates that the Defendants' due process rights would be violated by an assertion of personal jurisdiction, the Court concludes that it does not have personal jurisdiction over the Defendants.   Accordingly, the Defendants' Motions to Dismiss should be granted.

## IV.  Conclusion

For the reasons set forth above, Defendants Montway Inc. and Montway Trans, Inc.'s Motion to Set Aside Default [Doc. 11] is GRANTED, the Plaintiff's Motion for Default Judgment as to Defendants Montway Inc. and Montway Trans, Inc. [Doc. 12] is DENIED, Montway Inc. and Montway Trans, Inc.'s Motion to Strike Portions of

Plaintiff's Declaration [Doc. 17] is DENIED as MOOT, Defendant Mihaylov's Motion to Dismiss or in the Alternative Motion to Transfer Venue [Doc. 21] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Supplement Response [Doc. 23] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Present Additional Evidence [Doc. 25] is DENIED as MOOT, Montway Inc. and Montway Trans, Inc.'s Motion to Strike Conclusory Allegations From Plaintiff's Opposition to Defendant's Motion to Set Aside Default [Doc. 26] is DENIED as MOOT, Mihaylov's Motion to Present Additional Evidence [Doc. 34] is DENIED as MOOT, Mihaylov's Motion to Dismiss First Amended Complaint [Doc. 39] is GRANTED, Montway Inc. and Montway Trans, Inc.'s Motion to Dismiss First Amended Complaint [Doc. 40] is GRANTED, and Mihaylov, Montway Trans, Inc., and Montway Inc.'s Motion for Hearing [Doc. 41] is DENIED as MOOT.

SO ORDERED, this 4 day of January, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge